UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ALFRED SMITH,

              *Plaintiff*,

      *-against-*             **MEMORANDUM AND ORDER**

P.O. JOSEPH DEGIROLAMO, SHIELD NO.    17-cv-5532 (KAM)(ST)
'06632,' SGT. "JANE DOE," AND THE
CITY OF NEW YORK;

              *Defendants*.
----------------------------------X
**KIYO A. MATSUMOTO, United States District Judge:**

           Plaintiff Alfred Smith ("plaintiff") brings this

action against the City of New York ("City"), former New York

City Police Department ("NYPD") Officer Joseph DeGirolamo,

Shield No. 06632, and Sergeant "Jane Doe" (collectively,

"defendants"), alleging civil rights violations arising from

plaintiff's February 10, 2016 arrest for possession of a forged

instrument in the second degree under New York law.  (ECF No. 1,

Compl.)  Plaintiff asserts claims under 42 U.S.C. § 1983 for

false arrest and malicious prosecution, and under New York state

law for malicious prosecution and *respondeat superior*.

Presently before the court is defendants' motion for summary

judgment pursuant to Federal Rule of Civil Procedure 56.  For

the reasons set forth below, defendants' motion is granted and

plaintiff's case is dismissed in its entirety.

## BACKGROUND

The following material facts are drawn from the parties' submissions on the instant motion, including depositions, declarations, exhibits, and the parties' statements pursuant to Local Civil Rule 56.1.

## I.   Undisputed Material Facts

At approximately 3 p.m., on February 10, 2016, Plaintiff was driving a vehicle in Jamaica, Queens when he was pulled over by defendant, NYPD Officer Joseph DeGirolamo.  (ECF No. 43, Defendants' Statement of Material Facts Pursuant to Local Civil 56.1 ("Defs.' SOF") ¶¶ 3-4; ECF No. 41-6, Criminal Court Complaint, *People v. Smith*, Docket Number 2016QN006321 ("Crim. Compl.") 1.)[1]  At the time of the stop, there were two passengers in plaintiff's vehicle, including Ramel Solomon, who was sitting in the front passenger seat.  (Defs.' SOF ¶ 5.) Upon approaching Plaintiff's vehicle, Officer DeGirolamo asked plaintiff, Mr. Solomon, and the other passenger to exit the vehicle, and all complied.  (*Id.* ¶¶ 6-7.)

After plaintiff exited the vehicle, Officer DeGirolamo searched him.  In the course of the search, Officer DeGirolamo recovered a Pennsylvania driver's license from the interior of

---

[1]    The Criminal Complaint states that plaintiff's vehicle was stopped at Jamaica Avenue and 193rd Street, but the civil Complaint in this action refers to Jamaica Avenue and 196th Street. (*See* Compl. ¶ 16.)  The court need not resolve this inconsistency because the issue is immaterial to the instant motion's disposition.

plaintiff's wallet.  (Defs.' SOF ¶ 8.)  The license displayed Mr. Solomon's image, but not his real name, which he had provided to Officer DeGirolamo moments earlier.  (*Id.* ¶ 9; ECF No. 46-2, Deposition Transcript of Defendant Officer Joseph DeGirolamo, dated April 10, 2019 ("DeGirolamo Tr."), 23:8-14 ("Well, the license had a picture of the front passenger on it, and then the front passenger told me his name was Solomon which was not the name on the license.").)  Mr. Solomon admitted the license was forged, that it belonged to him, and that he purchased it for $20 in order to gain entry into nightclubs. (Defs.' SOF ¶ 10; ECF No. 45, Plaintiff's Statement of Material Facts Pursuant to Local Rule 56.1 ("Pl.'s SOF") ¶ 38.)

Upon discovering the forged license, Officer DeGirolamo placed Mr. Smith, Mr. Solomon, and the other passenger in handcuffs.  (Defs.' SOF ¶ 13.)  Plaintiff was arrested for Criminal Possession of a Forged Instrument in the Second Degree under New York Penal Law ("NYPL") § 175.25, and transported to the 103rd Precinct for arrest processing.  (*Id.* ¶¶ 14-15; ECF No. 41-8, NYPD Arrest Report for February 10, 2016 arrest.)  The following day, February 11, 2016, plaintiff was arraigned on the possession charge, as well as additional traffic violation under New York Vehicle and Traffic Law ("NYVTL") § 1163(a), for failing to signal a turn.  (Defs.' SOF ¶ 16; *see also* Crim. Compl.)  Plaintiff was held on $4,000.00

bond over $2,000.00 cash bail for two to three days.  (Pl.'s SOF
¶ 44.)

On June 28, 2016, the Queens County District Attorney
dismissed the criminal charges against plaintiff.  (Defs.' SOF ¶
17.)

## II.  Facts in Dispute

The parties' accounts diverge in several respects.
The most critical divergence concerns the grounds for the
initial traffic stop.  Officer DeGirolamo testified that he
pulled plaintiff over for making a left turn onto Jamaica Avenue
without using his directional signal.  (DeGirolamo Tr. 11:21-25
("**Q:** And why did you -- when did you make a determination to
pull the vehicle over? **A:** After I observed him make the left
turn without signaling.").)  Plaintiff disputes Officer
DeGirolamo's basis for pulling him over.  According to
plaintiff, his left turn signal had been on for approximately
one minute while he waited at a red light to make the left turn
onto Jamaica Avenue.  (ECF No. 46-1, Deposition Transcript of
Plaintiff Alfred Smith, dated January 17, 2019 ("Pl.'s Tr.")
67:24-68:6; *see also id.* 72:9-16.)  After completing the left
turn, plaintiff noticed a gray-colored jeep immediately behind
him begin flashing its lights as a signal to pull his vehicle
over.  (*Id.* 67:24-68:6.)

### III.   The Parties' Contentions

On September 20, 2017, plaintiff filed the instant action alleging false arrest and malicious prosecution under 42 U.S.C. § 1983, arising from the events surrounding plaintiff's February 10, 2016 arrest.  (Compl. ¶¶ 42-43, 47-49, 51, 55-56.) Following the close of discovery on April 19, 2019 (*see* ECF No. 34), defendants sought leave to move for summary judgment.  (*See* ECF No. 35.)  The defendants' motion was fully-briefed on September 30, 2019. (ECF Nos. 39-41.)

In the main, defendants contend plaintiff's claims should be summarily dismissed because Officer DeGirolamo had probable cause to arrest plaintiff for Possession of a Forged Instrument in the Second Degree, and also under NYVTL § 509(6), due to the forged driver's license found in plaintiff's wallet. (ECF No. 40, Defendants' Memorandum of Law in Support of Summary Judgment ("Mot.") 4-6.)  Defendants assert plaintiff's arrest was therefore privileged, vitiating his false arrest claim. (*Id.* 7.)  Likewise, defendants argue the existence of probable cause is fatal to plaintiff's malicious prosecution claim under federal law.  (*Id.* 11-12.)  Defendants further argue that plaintiff's malicious prosecution claim fails because plaintiff cannot demonstrate that his "interest of justice" dismissal was a favorable termination, or that the State's prosecution was motived by actual malice.  (*Id.* 8-11, 12-13.)  At a minimum,

defendants maintain there was *arguable* probable cause for
Officer DeGirolamo's arrest of plaintiff, thus entitling
defendants to qualified immunity from liability under § 1983.
(*Id.* 16-18.)  Lastly, defendants urge the court not to exercise
supplemental jurisdiction over plaintiff's state law malicious
prosecution claim, and to grant summary judgment on plaintiff's
*respondeat superior* claim, given the absence of an independent,
viable tort.  (*Id.* 19-21.)

Plaintiff's principal contention in opposition is that
Officer DeGirolamo lacked probable cause for arrest.  Plaintiff
insists "none of his actions at the time that he was stopped by
Officer DeGirolamo . . . would indicate in any manner that
[plaintiff] knew the document was forged and, even more
importantly, that he exhibited any interest to defraud, deceive
or injure anyone through use of a forged instrument."  (ECF No.
42, Plaintiff's Memorandum of Law in Opposition to Defendants'
Motion for Summary Judgment ("Opp.") 2.)  In addition, plaintiff
argues there is a factual issue concerning Officer DeGirolamo's
basis for stopping plaintiff's vehicle for failure to utilize
his turn signal.  (*Id.* 6-7.)  Plaintiff has consistently
maintained that he signaled when he turned onto Jamaica Avenue,
which contradicts Officer DeGirolamo's testimony, and according
to plaintiff, renders summary judgment inappropriate.

Turning to malicious prosecution, plaintiff concedes he cannot establish a claim under § 1983 because the State's case did not result in a favorable termination, as defined by the Second Circuit in *Lanning v. City of Glans Falls*, 908 F.3d 19 (2d Cir. 2018).  (Opp. 11-12.)  Plaintiff does not make the same concession regarding his state law malicious prosecution claim.  He explains in his opposition brief that common law malicious prosecution approaches the favorable termination element differently than its federal counterpart, and that defendants have not shown the absence of triable issues regarding the other elements of malicious prosecution.  (*Id.* 12-14.)  Lastly, plaintiff's opposition is silent regarding defendants' motion as it pertains to plaintiff's *respondent superior* claim.

## LEGAL STANDARD

Summary judgment shall be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)), *cert denied*, 565 U.S. 1260 (2012)).  No genuine issue of material fact exists "unless there is

sufficient evidence favoring the nonmoving party for a jury to
return a verdict for that party.  If the evidence is merely
colorable, or is not significantly probative, summary judgment
may be granted." *Anderson*, 477 U.S. at 249-50 (internal
citations omitted).  Summary judgment allows the court to
dispose of meritless claims before becoming entrenched in a
frivolous and costly trial.  *Knight v. U.S. Fire Ins. Co.*, 804
F.2d 9, 12 (2d Cir. 1986).

When bringing a motion for summary judgment, the
movant carries the burden of demonstrating the absence of any
disputed issues of material fact.  *Rojas*, 660 F.3d at 104.  In
deciding a summary judgment motion, the court must resolve all
ambiguities and draw all reasonable inferences against the
moving party.  *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d
Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio
Corp.*, 475 U.S. 574, 587 (1986)), *cert. denied,* 534 U.S. 1065
(2001)).  A moving party may indicate the absence of a factual
dispute by, *inter alia*, "showing . . . that an adverse party
cannot produce admissible evidence to support the fact."  Fed.
R. Civ. P. 56(c)(1)(B).  Put another way, "[w]here the record
taken as a whole could not lead a rational trier of fact to find
for the non-moving party, there is no 'genuine issue for
trial.'"  *Matsushita Elec. Ind. Co.*, 475 U.S. at 587.

Once the moving party has met its burden, the non-moving party may not rely on "ultimate or conclusory facts and conclusions of law" to defeat summary judgment.  *BellSouth Telecomm., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996) (citation omitted).  "The nonmoving party must go beyond the pleadings, and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002) (internal quotation marks and citations omitted); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(e).  In deciding a motion for summary judgment, the court is duty bound not to weigh evidence or assess the credibility of witnesses.  *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994).

## DISCUSSION

Defendants move for summary judgment on all claims. Plaintiff, by either silence or assent, appears to have abandoned his federal malicious prosecution claim and *respondeat superior* claim under state law.  *See Johnson v. FedEx Home Delivery,* No. 04-CV-4935, 2011 WL 6153425, at *8 (E.D.N.Y. Dec. 12, 2011).  The court nonetheless considers all claims below.

I.   **Section 1983 Claims**

        Plaintiff asserts false arrest and malicious prosecution claims pursuant to 42 U.S.C. § 1983 for the alleged deprivation of his rights under the Fourth and Fourteenth Amendments to the Constitution.  Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  42 U.S.C. § 1983.  "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012).  Section 1983 does not itself create substantive rights; rather, it "provides a method for vindicating federal rights elsewhere conferred[.]" *Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (internal quotation marks omitted).  To state a claim under Section 1983, a plaintiff must allege that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999).

### A. False Arrest

Defendants argue that plaintiff's federal and state false arrest claims fail because Officer DeGirolamo had probable cause to arrest.  (Mot. 3.)  "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Ackerman v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  In New York, to prevail on a false arrest claim, a plaintiff must show: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Wright v. Musanti*, 887 F.3d 577, 587 (2d Cir. 2018) (citing *Broughton v. New York*, 335 N.E.2d 310, 314 (N.Y. 1975)).  "An arrest is privileged if it is supported by probable cause, which 'is an absolute defense to a false arrest claim.'" *Heyliger v. Peters*, 771 Fed. App'x 96, 97 (2d Cir. 2019) (summary order) (quoting *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006)).

1. Officer DeGirolamo's Basis for Stopping
   Plaintiff's Vehicle is Immaterial Under § 1983

Plaintiff alludes, almost in passing, to a factual dispute regarding Officer DeGirolamo's justification for the initial stop of plaintiff's vehicle.  (Opp. 6-7.)  But the implications of the dispute are of greater significance than the parties seem to appreciate.  Plaintiff testified that he properly signaled before turning onto Jamaica Avenue; Officer DeGirolamo claims he stopped plaintiff's vehicle after observing plaintiff make a left turn without signaling. (*Compare* Pl.'s Tr. 68:5-6, 72:9-16, *with* DeGirolamo Tr. 11:21-25, 8:23-24.)  After he stopped plaintiff's car, Officer DeGirolamo subsequently searched the vehicle and plaintiff, and recovered the forged license from plaintiff's wallet.  (Def.'s SOF ¶¶ 6-8.)  Accepting the truth of plaintiff's testimony would suggest, at first blush, that Officer DeGirolamo lacked probable cause or even reasonable suspicion to justify stopping plaintiff's vehicle, thus tainting Officer DeGirolamo's discovery of the forged license.

Under Fourth Amendment jurisprudence, "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons.'"  *Whren v. United States,* 517 U.S. 806, 809 (1996).  A vehicle stop is valid if a

police officer had probable cause or reasonable suspicion to believe that an individual violated the traffic laws. *United States v. Murphy*, 778 F. Supp. 2d 237, 255-56 (N.D.N.Y. 2011) (quoting *Delaware v. Prouse,* 440 U.S. 648, 663 (1979)); *see United States v. Stewart,* 551 F.3d 187, 193 (2d Cir. 2009) (holding "unambiguously that the reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop.").

"Reasonable suspicion requires 'some minimal level of objective justification' for suspecting criminal activity." *United States v. Bristol,* 819 F. Supp. 2d 135, 141 (E.D.N.Y. 2011) (quoting *United States v. Sokolow,* 490 U.S. 1, 7 (1989)). For a vehicle stop to be considered lawful, the police officer's suspicion must be "based on specific and articulable facts, of unlawful conduct." *Terry v. Ohio,* 392 U.S. 1, 21 (1968); *see United States v. Scopo,* 19 F.3d 777, 781 (2d Cir. 1994) (officer had probable cause to stop vehicle based on "specific and articulable fact: the observed traffic violation."); *see also United States v. Price,* No. 13-CR-216 (RRM) 2014 WL 558674, at *5 (E.D.N.Y. Feb. 11, 2014) (finding police officers' search and seizure was unlawful due to lack of reasonable suspicion). "The Government bears the burden of proving, by a preponderance of the evidence, that reasonable suspicion existed for a stop."

*United States v. Stewart,* 604 F.Supp.2d 676, 680 (S.D.N.Y. 2009) (quoting *United States v. Medina,* 301 F.Supp.2d 322, 328 (S.D.N.Y. 2004)); *see also United States v. Gomez,* 199 F. Supp. 3d 728, 741 (S.D.N.Y. 2016). In a criminal case, "[i]f the stop is unconstitutional, the resulting search and seizure is tainted as fruit of the poisonous tree." *United States v. Santiago,* 950 F. Supp. 590, 594 (S.D.N.Y. 1996) (citing *Wong Sun v. United States,* 371 U.S. 471 (1963)).

Therefore, it appears that before the court determines whether probable cause existed to justify plaintiff's arrest, the court must first address whether the initial stop of plaintiff's vehicle was "justified at its inception." *See United States v. Jenkins,* 452 F.3d 207, 212 (2d Cir. 2006) ("[A]n illegal stop cannot be made legal by incriminating behavior that comes after the suspect is stopped.") (quoting *United States v. Swindle,* 407 F.3d 562, 568 (2d Cir. 2005)); *see also United States v. Como,* 340 F.2d 891, 893 (2d Cir. 1965) ("[I]t is an elementary maxim that a search, seizure or arrest cannot be retroactively justified by what is uncovered."); *see United States v. Harrell,* 268 F.3d 141, 148 (2d Cir. 2001) ("Evidence seized based on an unreasonable traffic stop 'is subject to the poisonous tree doctrine, and may be suppressed.'") (quoting *Scopo,* 19 F.3d at 781)).

But controlling law in § 1983 cases holds otherwise. The Second Circuit has explicitly held that the "fruit of the poisonous tree" doctrine does not apply to § 1983 claims. *Townes v. City of N.Y.,* 176 F.3d 138, 145 (2d Cir. 1999) ("We find no case in which the doctrine has been successfully invoked to support a § 1983 claim, and we see no reason why it could be."). Judge Jacobs, writing for a three-judge panel, advanced the following rationale in *Townes* for curtailing the doctrine's use for civil claims:

> The fruit of the poisonous tree doctrine is calculated to deter future unlawful police conduct and protect liberty by creating an incentive—avoidance of the suppression of illegally seized evidence—for state actors to respect the constitutional rights of suspects. Like the exclusionary rule, the fruit of the poisonous tree doctrine is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.
>
> As with any remedial device, the application of the exclusionary rule has been restricted to those areas where its remedial objectives are thought most efficaciously served. If the exclusionary rule does not result in appreciable deterrence, then, clearly, its use is unwarranted. The Supreme Court has refused for that reason to extend the exclusionary rule to non-criminal contexts, including civil tax proceedings, habeas proceedings, grand jury proceedings, INS deportation proceedings, and parole revocation proceedings.

*Id.* at 145-46 (citations, ellipses, brackets, and quotation marks omitted). Whereas the deterrence objective of the "fruit of the poisonous tree" doctrine was best achieved by a criminal

court's suppression of tainted evidence, the Second Circuit warned that allowing § 1983 actions "to proceed solely on a fruit of the poisonous tree theory of damages would vastly overdeter state actors . . . ." *Id.*

Naturally, district courts in the Second Circuit have construed *Townes* as nullifying the "fruit of the poisonous tree" doctrine as applied to § 1983 actions. *See, e.g.*, *White v. City of N.Y.*, No. 15-CV-3321 (PKC)(RER), 2018 WL 1545676, at *4 (E.D.N.Y. Mar. 29, 2018) (in § 1983 action, "regardless of any factual dispute over whether the search of Plaintiff's apartment was lawful, the Court may consider the discovery of the air rifle in Plaintiff's apartment and his admission about not having the required permit for the rifle in finding, as a matter of law, that probable cause supported Plaintiff's April 18, 2013 arrest."); *Gannon v. City of N.Y.*, 917 F. Supp. 2d 241, 243 (S.D.N.Y. 2013) ("[T]he Second Circuit has clearly rejected . . . attempt[s] to recover damages under § 1983 based on the fruits of the poisonous tree doctrine.").

At bottom, defendants' justification for the initial stop of plaintiff's vehicle, while presenting a genuine factual dispute, does not concern a ***material*** issue.[2]  Under Second

---

[2]      Plaintiff asserts a dispute of material fact regarding probable cause to arrest for violation of NYVTL § 1163(a), but as discussed below, there was probable to arrest plaintiff for violations of both NYPL § 170.25 and NYVTL 509(6).

Circuit precedent, even if Officer DeGirolamo lacked any reasonable basis to stop plaintiff's vehicle, that fact—though possibly meriting suppression of any subsequently acquired evidence in a criminal proceeding—does not taint the discovery of the forged license in plaintiff's wallet to establish probable cause in this § 1983 action.

The court next considers whether Officer DeGirolamo had probable cause to arrest plaintiff.

### 2. There Was Probable Cause to Arrest Plaintiff

Under New York law, "[a] person is guilty of criminal possession of a forged instrument in the second degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses any forged instrument of a kind specified in section 170.10." NYPL § 170.25.[3] "Guilty knowledge of forgery may be shown circumstantially by conduct and events." *Stokes v. City of N.Y.,* No. 05-CV-0007 (JFB) (MDG) 2007 WL 1300983, at *6 n.5 (E.D.N.Y. May 3, 2007) (quoting *People v. Johnson,* 65 N.Y.2d 556, 561 (N.Y. 1985)).

Probable cause is an objective inquiry based on the facts available to the police officer at the time of arrest.

---

[3]   The forged instrument here, a fraudulent Pennsylvania driver's license, purports to be "[a] written instrument officially issued or created by a public office, public servant or governmental instrumentality." NYPL § 170.10(3).

*Santulli v. Moy*, No. 18-CV-122 (NGG) (VMS), 2019 WL 3429081, at
*5 (E.D.N.Y. Jul. 30, 2019) ("The inquiry is objective, and a
court should not consider the subjective beliefs or motivations
of the arresting officer.") (internal quotations omitted)).
Probable cause also does not require direct evidence of a
suspect's state of mind.  *See McGuire v. City of N.Y.*, 142 Fed.
App'x. 1, 3 (2d Cir. 2005) ("[W]hen an officer has evidence that
a defendant has engaged in conduct proscribed by law . . . he
has probable cause to arrest the person even without specific
evidence on the elements of knowledge and intent that will have
to be proved to secure a conviction at trial.") (citing *Whren*,
517 U.S. at 812-13); *see also Johnston v. Port Auth. of N.Y. &
N.J.,* No. 09 Civ. 4432 (JG)(CLP), 2011 WL 3235760, at *6
(E.D.N.Y. Jul. 28, 2011) (finding probable cause to arrest Port
Authority Police Officer for possession of a forged NYPD
identification card, notwithstanding lack of evidence of his
intent to use the identification in an unlawful manner).

        There is no dispute that plaintiff possessed a forged
driver's license in his wallet.  Officer DeGirolamo testified
that he retrieved Mr. Solomon's forged Pennsylvania driver's
license from the "center portion" of plaintiff's wallet.
(DeGirolamo Tr. 16:6-7, 17:19-24; Defs.' SOF ¶ 14.)  Plaintiff
acknowledged that the forged license, which he was holding for
Mr. Solomon, was in his wallet at the time of plaintiff's search

and arrest.  (Pl.'s Tr. 60-61, 70-71; Pl.'s SOF ¶¶ 20-21, 30, 34-35.)  By directly observing the forged driver's license in the wallet seized from plaintiff's person, Officer DeGirolamo obtained objective evidence of criminality sufficient to meet the probable cause threshold and arrest plaintiff.

Plaintiff counters that Officer DeGirolamo had no way of knowing if plaintiff actually knew the license in his possession, which bore Mr. Solomon's photograph but not his name, was forged, or whether plaintiff intended to use the forged license.  (Opp. 3.)  This argument fails.  It is true that, in order to secure a *conviction* for criminal possession of a forged instrument, the prosecution must prove a defendant both knew of the forgery, and intended to use the forged instrument for illicit ends.  *See* NYPL § 170.25.  "But the standard for determining a defendant's guilt at trial is not the standard for determining probable cause."  *Johnston*, 2011 WL 3235760, at *10. Thus, whether plaintiff actually knew of the forgery, or intended to use the license for fraudulent ends, is plainly irrelevant to the probable cause assessment.  *See McGuire*, 142 Fed. App'x at 3 ("[W]hen an officer has evidence that a defendant has engaged in conduct proscribed by law—whether transporting a quantity of drugs, possessing a stolen item, or driving with a suspended license—he has probable cause to arrest the person even without specific evidence on the elements of

knowledge and intent that will have to be proved to secure a conviction at trial."); *see also Johnston*, No. 09 Civ. 4432 (JG)(CLP), 2011 WL 3235760, at *10 (finding probable cause to arrest Port Authority Police Officer for possession of a forged NYPD identification card, notwithstanding lack of evidence of his intent to use the identification in an unlawful manner). Therefore, Officer DeGirolamo did not lack probable cause to arrest plaintiff under NYPL § 170.25, even though the State would have had to prove plaintiff had knowledge of the license's falsity, and intended to use to it defraud, in order to convict.[4]

It is likewise immaterial that plaintiff disclaimed ownership of the forged license. (*See* Pl.'s Tr. 60:16-17; Defs.' SOF ¶ 10; Pl.'s SOF ¶ 38.)  "Under some circumstances, a police officer's awareness of the facts supporting a defense can eliminate probable cause." *Jocks v. Tavernier,* 316 F.3d 128, 135 (2d Cir. 2003).  But nothing in the record suggests that Officer DeGirolamo ignored potentially exculpatory facts.  He "was neither compelled to accept [plaintiff's] assertions at face value, nor to investigate them." *Id.*  The Second Circuit does not "impose a duty [on] the arresting officer to

---

[4]     Plaintiff's argument rests entirely on a foundation of inapposite authorities that concern the sufficiency of evidence to convict, not the existence of an objective, reasonable basis to arrest. (*See* Opp. 3-4.) *E.g., People v. Muhammed*, 16 N.Y.3d 184, 187-88 (N.Y. 2011) (assessing sufficiency of evidence to convict on count of possession of a forged instrument); *People v. Bailey,* 13 N.Y.3d 67, 71 (N.Y. 2009) (same); *Johnson*, 65 N.Y.2d at 560-61 (same).

investigate exculpatory defenses offered by the person being arrested . . . ." *Id.* (citing *Ricciuti v. N.Y. City Transit Auth.,* 124 F.3d 123 (2d Cir. 1997)).  "Probable cause is not eliminated [ ] by the mere existence of evidence that *could* permit a conclusion of innocence." *Williams v. Suffolk Cty.,* 284 F. Supp. 3d 275, 287 (E.D.N.Y. 2018) (emphasis added) (quoting *Carpenter v. City of N.Y.*, 984 F. Supp. 2d 255, 265 (S.D.N.Y. 2013)); *see also Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("Although a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him.").

Moreover, there was *also* probable cause arrest plaintiff under NYVTL § 509(6), even though the Queens District Attorney did not charge him for that offense.  (*See generally* Crim. Compl.)  NYVTL § 509(6) provides that no person shall, "at any time possess or use any forged, fictitious or illegally obtained license, or use any license belonging to another person."  (NYVTL § 509(6); Mot. 6.)  *Cf. People v. Campisi*, 82 Misc. 2d 254, 255 (N.Y. Sup. Ct. 1975) (defendant convicted of criminal possession of a forged instrument in the second degree could have also been found guilty under NYVTL § 509(6).  "[I]t is well-established that an officer's direct observation of even a minor traffic violation is sufficient probable cause to arrest

the violator." *Smart v. City of N.Y.*, No. 08CV2203HB, 2009 WL 862281, at *4 (S.D.N.Y. Apr. 1, 2009) (*Scopo*, 19 F.3d at 781–782 (officers had probable cause to stop and arrest defendant they directly observed violate traffic laws by not signaling lane changes notwithstanding that the violation was "minor")).

Here, plaintiff's possession of Mr. Solomon's forged license violated NYVTL § 509(6).  Unlike NYPL § 170.25, NYVTL § 509(6) does not include a knowledge or *mens rea* element, it merely requires defendant to have possessed a forged license or any license belonging to another person.  Under New York law, a person "constructively possesses tangible property when he [or she] exercises 'dominion and control' over the property with a sufficient level of control over the area in which the contraband is found." *Turyants v. City of N.Y.*, 18-CV-841 (PKC)(PK), 2020 WL 804900, at *3 (E.D.N.Y. Feb. 18, 2020) (quoting *Davis v. City of N.Y.*, No. 04-CV-3299 (JFB) (RLM), 2007 WL 755190, at *5 (E.D.N.Y. Feb. 15, 2007)).  Plaintiff's protestations that the forged license belonged to Mr. Solomon, even if credited, are irrelevant to the possession inquiry. "[C]onstructive possession is not a single-possessor theory, and multiple individuals may have constructive possession of contraband." *Roberts v. City of N.Y.*, No. 16-CV-5409 (BMC), 2017 WL 4357291, at *5 (E.D.N.Y. Sept. 29, 2017); *see also Turyants*, 2020 WL 804900, at *5 (finding the fact that someone

else "tried to take responsibility for the forged documents was insufficient to counter Defendants' reasonable belief that Plaintiff also possessed the documents.").

Even if plaintiff did not have exclusive control over the forged license, the license's presence in his wallet at the time of Officer DeGirolamo's search exhibited "sufficient indicia of dominion and control" to establish possession. *United States v. Rios*, 856 F.2d 493, 496 (2d Cir. 1988); *see also Roberts*, 2017 WL 4357291, at *5. Plaintiff's proximity to the forged documents was sufficient to "suggest [his] awareness of and/or control over the fraudulent documents." *Turyants*, 2020 WL 804900, at *5; *see Edwards v. Castro*, No. 16-CV-2383 (KMK), 2018 WL 4680996, at *9 (S.D.N.Y. Sept. 28, 2018) (finding probable cause existed to arrest the plaintiff even though plaintiff never touched the backpack because "the backpack was within [the p]laintiff's reach as the driver of the vehicle") (internal record citations omitted).

Accordingly, Officer DeGirolamo not only had probable cause to arrest plaintiff under NYPL § 170.25, he had an objectively reasonable basis to determine plaintiff was in possession of a forged license, and at a minimum, a license belonging to another person. Thus, there was probable cause to arrest plaintiff for violating NYVTL § 509(6). Courts within this Circuit have consistently held that, as long as there was

probable cause to arrest the suspect for *some* crime—even a crime not articulated by the arresting officer, or one "closely related"—the arrest comports with constitutional requirements under the Fourth Amendment. *Jaegly*, 439 F.3d at 154 (citing *Devenpeck v. Alford,* 543 U.S. 146, 153-54 (2004)). A false arrest claim "turns only on whether probable cause existed to arrest a defendant," and it is irrelevant if "probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly*, 439 F.3d at 154; *see also Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010).

The court grants summary judgment in favor of defendants and dismisses plaintiff's federal false arrest claim.

## B. Malicious Prosecution

Defendant moves to dismiss plaintiff's claim for malicious prosecution under federal law, pursuant to § 1983. (Mot. 7.) Plaintiff does not oppose dismissal. (Opp. 12.) Plaintiff's abandonment of his malicious prosecution claim under § 1983 warrants dismissal, but to avoid any doubt, the court also considers and grants defendant's motion on the merits.[5]

---

[5] A majority of courts hold that a plaintiff's abandonment of claims constitutes sufficient grounds for dismissal. *See Gilliard v. City of N.Y.*, No. 10-CV-5187 (NGG)(CLP), 2013 WL 521529, at *14 n.17 (E.D.N.Y. Feb. 11, 2013) (collecting cases); *see also Parrilla v. City of N.Y.*, No. 09 Civ. 8314(SAS), 2011 WL 611849, at *1 n.4 (S.D.N.Y. Feb. 16, 2011).

"In the absence of federal common law, the merits of a claim for malicious prosecution under § 1983 are governed by state law." *Dufort v. City of N.Y.*, 874 F.3d 338, 350 (2d Cir. 2017). Under New York state law, the elements of a malicious prosecution claim include: "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." *Id.* (quoting *Smith-Hunter v. Harvey*, 734 N.E.2d 750, 752-53 (N.Y. 2000)). To bring a malicious prosecution claim under § 1983, the plaintiff must also show a "'seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment.'" *Mitchell v. City of N.Y.*, 841 F.3d 72, 79 (2d Cir. 2016).

A favorable termination "is defined more narrowly in the context of malicious prosecution claims brought under § 1983 than those brought under New York state law." *Roger v. Cty. of Suffolk*, No. 13-cv-5290 (JS) (ARL) 2020 WL 2063415, at *2 (E.D.N.Y. Apr. 29, 2020) (internal quotations omitted)). New York courts have held that "any termination of a criminal prosecution, such that the criminal charges may not be brought again, qualifies as a favorable termination, so long as the circumstances surrounding the termination are not inconsistent

with the innocence of the accused." *Cantalino v. Danner*, 96
N.Y.2d 391, 395 (2001).  "[A] plaintiff alleging malicious
prosecution under § 1983," on the other hand, "can only satisfy
the favorable termination element by showing that 'the
prosecution terminated in some manner indicating that the person
was not guilty of the offense charged.'" *Simon v. City of N.Y.*,
16-CV-1017 (NGG) (RML), 2020 WL 1323114, at *3 (E.D.N.Y. Mar.
19, 2020), *reconsideration denied sub nom. Simon v. Cruz*, No.
16CV1017NGGRML, 2020 WL 2837020 (E.D.N.Y. June 1, 2020)
(citation omitted); *see also Singleton v. City of N.Y.*, 632 F.2d
185, 195 (2d Cir. 1980).[6]

      In *Lanning v. City of Glens Falls*, the Second Circuit
held that an "interest of justice" dismissal "leaves the
question of guilt or innocence unanswered," and as such "cannot
provide the favorable termination required" for a § 1983
malicious prosecution claim.  908 F.3d 19, 28 (2d Cir. 2018);
*Simon*, 2020 WL 1323114, at *3 ("*Lanning* is explicit that 'a
dismissal in the interest of justice [that] leaves the question
of guilt or innocence unanswered . . . cannot provide the
favorable termination required' for a § 1983 malicious

---

[6]    The Second Circuit recently upheld the more stringent standard for
favorable termination, declaring, "[w]e are not 'bound to apply New York law
to malicious prosecution claims arising under § 1983'; rather, we rely on our
prior definitions of 'favorable termination' for the purposes of § 1983
actions." *Olaizola v. Foley*, 797 Fed. App'x. 623, 625 (2d Cir. 2020)
(summary order) (quoting *Lanning*, 908 F.3d at 28).

prosecution claim."); *see also Isaac v. City of N.Y.*, 16-cv-4729
(KAM)(RLM), 2020 WL 1694300, at *7 (E.D.N.Y. Apr. 6, 2020)
(finding plaintiff did not show element of favorable termination
where convictions were vacated for legal insufficiency since the
dismissal did not "affirmatively indicate [plaintiff's]
innocence.").

On June 28, 2016, the Queens County District
Attorney's Office moved to dismiss the charges against
plaintiff.  A two-page, nine line transcript of the dismissal
hearing reflects that the Queens County Criminal Court asked the
Assistant District Attorney how the State wished to proceed, to
which the prosecutor responded only that he was "moving to
dismiss in the interest of justice."  (ECF No. 41-7, Transcript
for June 28, 2016 Dismissal Hearing ("Dismissal Tr.") 2:3-6.)
The court then dismissed the charges against plaintiff.  (*Id.*
2:7-8.)  The record is otherwise bereft of discussion relating
to plaintiff's guilt or innocence, and therefore, plaintiff
cannot show there is a triable issue whether his "interest of
justice" dismissal constituted a favorable termination.  Summary
judgment is thus granted for plaintiff's malicious prosecution
claim under § 1983.

### C. Qualified Immunity

Qualified immunity protects officers "from liability
for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (citation omitted).  An officer is "entitled to qualified immunity . . . if he can establish that there was 'arguable probable cause' to arrest." *Zalaski v. City of Hartford,* 723 F.3d 382, 390 (2d Cir. 2013) (quoting *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir. 2004)).  Defendants are entitled to qualified immunity if they show that: (a) Officer DeGirolamo's actions did not violate clearly established law, or (b) it was objectively reasonable for him to believe that his actions did not violate such law.  *See Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (citing *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)).

Because the court has found that there was probable cause to arrest plaintiff, defendants' entitlement to qualified immunity is a foregone conclusion.  *See Gaston v. City of N.Y.,* 851 F. Supp. 2d. 780, 795-96 (S.D.N.Y. 2012) (holding that where the court held that defendant had actual probable cause but only needs to have had arguable probable cause to be entitled to qualified immunity, defendant "is entitled to summary judgment for [] false arrest, false imprisonment and malicious prosecution claims on qualified immunity grounds.").  Accordingly, the court grants summary judgment as to plaintiff's

false arrest and malicious prosecution claims under the doctrine of qualified immunity.

## II.   State Law Claims

Defendants urge the court not to exercise supplemental jurisdiction over plaintiff's remaining state law claims for malicious prosecution and *respondeat superior*, given the absence of any remaining jurisdictional hook under §§ 1331 or 1343. (Mot. 19-20.)   In the alternative, defendants argue that the malicious prosecution claim fails as a matter of law because, even if there was a favorable termination under New York's comparatively more lenient standard, there was probable cause to arrest plaintiff and malice has not been established.   (*Id.* 4.)

### A. Supplemental Jurisdiction

The dismissal of plaintiff's federal claims dissolves the court's bases for jurisdiction, to the extent predicated on 28 U.S.C. §§ 1331 and 1343.   A district court "may decline to exercise supplemental jurisdiction" over a claim arising under state law if the court "has dismissed all claims over which it has original jurisdiction."   28 U.S.C. § 1367(c)(3).   A district court may also decline to hear a state claim, if it "raises a novel or complex issue of state law."   *Id.* § 1367(c)(1).

"The exercise of supplemental jurisdiction is left to the discretion of the district court . . . ."   *Ametex Fabrics, Inc.* v. *Just In Materials, Inc.*, 140 F.3d 101, 105 (2d Cir. 1998)

(internal quotation marks omitted).  "If the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."  *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 182–83 (2d Cir. 2004) (internal quotation marks, citation, and brackets omitted).  "Moreover, the discretion implicit in the word 'may' in subdivision (c) of [28 U.S.C.] § 1367 permits the district court to weigh and balance several factors, including considerations of judicial economy, convenience, and fairness to litigants."  *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994).

### B. Novel or Complex Issues

As discussed above, whether Officer DeGirolamo stopped plaintiff's vehicle based on an objectively reasonable suspicion is a question of fact.  The law in New York state does not appear settled regarding the "fruit of the poisonous tree" doctrine as applied to civil claims.  In *Martinez v. City of Schenectady*, the New York Court of Appeals affirmed a summary judgment order dismissing a false imprisonment claim because there was ample probable cause to justify arrest.  97 N.Y.2d 78, 85 (N.Y. 2001).  The court affirmed even though the criminal court suppressed the search warrant that law enforcement relied on to seize much of the evidence justifying plaintiff's arrest, resulting in *vacatur* of plaintiff's conviction.  *See id.* at 81–

82.  *Martinez* may therefore imply that the lack of probable cause for an initial search or seizure taints the subsequent acquisition of probable cause to arrest in a state law civil suit.  But New York courts have seldom cited *Martinez* in the 19 years since it was decided, and apparently never for the proposition that the "fruit of the poisonous tree" doctrine applies to state law civil claims for malicious prosecution or false imprisonment.  There is otherwise scarce case law indicating whether the "fruit of the poisonous tree" doctrine applies to New York state tort claims.  Absent a bright line rule, this inquiry appears to raise a novel issue of state law. *See Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1998) (holding that where state claims involved novel or complex questions of state law, it was an abuse of discretion to exercise jurisdiction over the state claims after dismissing the federal claims) (citing *Morse v. Univ. of Vermont,* 973 F.2d 122, 127–28 (2d Cir. 1992)).  Lacking settled precedent, the court also cannot determine with reasonable certitude whether issues of fact exist as to the probable cause or actual malice elements of state law malicious prosecution.  If the "fruit of the poisonous tree" doctrine were to apply, plaintiff's claim that he properly signaled before turning onto Jamaica Avenue might negate Officer DeGirolamo's probable cause to arrest, and could possibly lead a jury to determine that Officer DeGirolamo acted

with malice when he pulled plaintiff over without justification.
Because plaintiff's state law malicious prosecution claim may
survive depending on New York's approach to the "fruit of the
poisonous tree," the survival of plaintiff's derivative
*respondeat superior* claim likewise hinges on New York's approach
to that legal doctrine.[7]

The court believes the prudent course is to decline
supplemental jurisdiction over the remaining state law claims,
pursuant to § 1367(c)(1), and leave any novel questions of New
York state law to be decided by New York state courts.  The
court also declines to exercise supplemental jurisdiction over
the remaining state law claims given the dismissal of all
federal claims.  28 U.S.C. § 1367(c)(3); *see Hicks v. Wells
Fargo Bank, N.A.,* No. 19-CV-6253L, 2020 WL 3172771, at *8
(W.D.N.Y. June 15, 2020) ("From a procedural standpoint, this
case remains in its early stages, and there is no sound reason
for this Court to decide plaintiff's claims under state law, in
the absence of any viable federal claims."); *Rafiy v. Cty. of
Nassau*, No. 15-CV-6497 (SJF) (GRB), 2019 WL 7862885, at *10

---

[7]     "Unlike cases brought under § 1983, municipalities may be liable for
the common law torts, like false arrest and malicious prosecution, committed
by their employees under the doctrine of *respondeat superior.*" *L.B. v. Town
of Chester,* 232 F. Supp. 2d 227, 239 (S.D.N.Y. 2002); *see also Lore v. City
of Syracuse,* 670 F.3d 127, 168 (2d Cir. 2012) ("'Municipalities surrendered
their common-law tort immunity for the misfeasance of their officers and
employees long ago.'") (quoting *Tango v. Tulevech,* 61 N.Y.2d 34, 40 (N.Y.
1983)).

(E.D.N.Y. Nov. 13, 2019), *report and recommendation adopted*, No. 15-CV-6497 (SJF)(GRB), 2019 WL 7046560 (E.D.N.Y. Dec. 23, 2019) (declining exercise of supplemental jurisdiction over plaintiff's state law claims where all the federal claims were dismissed).

Plaintiff's state law claims are therefore dismissed without prejudice. *Naimoli v. Ocwen Loan Serving, LLC*, No. 6:18-CV-06180 EAW, 2020 WL 2059780, at *16-17 (W.D.N.Y. Apr. 29, 2020) (citing *JetBlue Airways Corp. v. CopyTele Inc.*, 629 F. App'x 44, 45 (2d Cir. 2015) (dismissal for lack of subject matter jurisdiction must be without prejudice)). Pursuant to 28 U.S.C. § 1367(d), any applicable statute of limitations tolled during the pendency of this action shall be tolled for a period of 30 additional days after dismissal.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment on plaintiff's federal claims is GRANTED in its entirety. Plaintiff's federal false arrest and malicious prosecution claims under 42 U.S.C. § 1983 are DISMISSED with prejudice. The court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims. Pursuant to 28 U.S.C. § 1367(d), the limitations period for plaintiff's state law claims is tolled for a period of 30 days after the entry of this Order dismissing such claims, unless New York state law provides for a longer tolling period.

The Clerk of the Court is respectfully requested to enter judgment in favor of the defendants, and to close the case.

**SO ORDERED.**

Dated: September 25, 2020
       Brooklyn, New York

                                   /s/
                    _____
                    **KIYO A. MATSUMOTO**
                    United States District Judge
                    Eastern District of New York